May it please the court, Kim Bridge for the appellant, Ms. Conners. I rise to challenge the district court's determination and hopefully to reverse that determination so that it was unnecessary to engage in the interactive process to address plaintiff's handicapping conditions which arose during her term of employment. By all accounts, uncontested, the plaintiff suffered horrendous injuries on October 29th, 2011 in an accident where she was essentially a pedestrian and run over with a car. At that point, she worked at Lowell VA Healthcare, previously known as North Chicago. And the seminal issue in this case following that injury, therefore, is whether the agency flunked its duties to reasonably accommodate Ms. Conners after her accident. And there's two essential time periods. As an LPN at the time of the accident, the duty to accommodate would be directed towards preserving her ability to work as an LPN. There's a second period which is separate but just as important in an accommodation sense. That's the period after Ms. Conners became increasingly disabled and thereafter requested reassignment. So an alternate, even lower position to continue her employment. The district court. Do you agree, focusing on those two periods, do you agree, was there ever a period of time right after the accident, you know, that June to October 2012 period, or even into 2013, do you agree there was ever a period of time where she was able to return and work as a nurse? Absolutely. The record reflects that during a period of that one year period, after that accident, she was assigned essentially the same duties, performed the same functions. When you say absolutely, are you saying yes, when she returned? Yes, she returned to work in her normal position. And your view is that she was capable of doing that? Yes. Absolutely. Capable with a reasonable accommodation. Now the accommodation in that case was simply that she'd be allowed a period of time to raise her leg during the day, a very strict limitation of her ambulatory efforts. She couldn't walk very well. That accident caused an incredible amount of damage. And really, she was required at that point to give immunizations, to teach, to attend classes and instruct these recruits as they're coming in. The only thing she really couldn't do was lift people or satisfy the physical requirements in LP in an emergency situation. Nurse Bailey, her supervisor, said, yeah, she continued to work. We tried to work with her. That's not the point. The point is whether she is qualified to perform the essential functions of her job, not whether she could be placed in some different job. All I can tell the Court is she was doing the same principal duties she was doing before that. She wasn't doing immunizations. Oh, yes, she was doing immunizations. She was. Other health care. Well, she was traveling about this complex, and when this complex is set up, they have immunizations, they have dental, they have vision screening. All these people walk around almost like a little bazaar, and she continued to do that. The problem became that she had to continue to walk extensive periods and stand for extensive periods. Mr. Bridge, let me tell you what's really confusing me. Okay. I took your brief to be saying in the June to October 2012 time period that she was walking around, she was doing all this other stuff, and that actually led to aggravated injury. She hurt her leg somehow. There was a rod that broke or there was a rod problem in her leg. Am I right about that? Absolutely correct, Judge. Okay, so what I don't understand is how can we say that on the one hand and then on the other hand turn right around and say, oh, she was perfectly qualified to work as a nurse. She was an LPN in a specific area. But the nurse job, right, required all this walking, all this standing, all this movement, it's a busy shop, you know, et cetera, et cetera. So I don't know how on the one hand you can say they're requiring her or her walking all around led to a broken leg, but then in the next breath say, oh, but she was totally qualified to work as a nurse. It seems like it odds with itself. During this period when she was returned back to work, right, she was returned back to work by her physician with restrictions, and those restrictions were clear, as I indicated to you before. However, as this month-to-month period went on, she submitted no less than two dozen letters from her physicians saying this isn't working. She's not being allowed to raise her leg appropriately. As a result of some of this work and walking, she's now having to have multiple surgeries to fix the same areas. That's where I'm going to stop and you continue. But when you say that, that's where I think, well, that's all right. She turned in 26 doctor's notes. Yes. Okay. Those very notes and what you're talking about, the need to raise the leg, et cetera, et cetera, those are precisely and terribly unfortunately what make her unqualified to work as a nurse. Perhaps there was a better accommodation, Your Honor. Very clear. The accommodations aren't limited to staying at this position, staying at this nursing position. Accommodations could take the form of reassignments, take the form of leaves, take the form of extended leaves, powering medical leave from other employees. Now, that's a different argument. That argument is, that argument would go like this. She's not able, because of this tragic accident, to work as a nurse between June and October 2012. Her physical injuries are too severe and they're too limiting. So, her employer, the argument would continue, was under a legal obligation to identify a different job, one that did not require walking, standing, et cetera.  Is that the argument you're making? Certainly, there's two periods. It makes no sense to allow somebody to go to work and to come back with 26 medical reports saying, I need to change this. It's not working. I can't physically, because of my leg injury, do what I did before. At that point, the duty to reasonably accommodate arises. And it's inappropriate, because you believe she couldn't do all the major life activities of an LPN, to say, that's the end of the ballgame for you. In fact, the rehabilitation accident, that's the beginning of the ballgame. But if the claim is of the second type that Judge Scudder was referring to, that I was not qualified to perform the nurse's job, but I am qualified to do some other job, then it's your burden to identify what other job that is, and that there was a vacancy that she could fill. And you didn't do that. Well, I think we did, but let me finish, if I may, Your Honor, the fact regarding getting something going in the way of dealing with her post-accident period. Now, at that point in time, as I indicated, there was numerous medical reports coming in. Nurse Bailey, her supervisor, testified that I received these reports, but I didn't consider them. I didn't consider them real, reasonable accommodation requests, because they weren't on forms that the VA usually uses. And she said further in her deposition, you know, I now know that they were requests for accommodation. I've read the policy now. But at the time, I didn't know. So 26 of these letters go into her desk, and the question becomes, how does that reasonably accommodate? The VA policy very clearly says that when that request – That's an attack on the interactive process, and the interactive process is not a freestanding – a failure of the interactive process is not a freestanding claim. But the interactive process – That can't be the basis of the suit. But the interactive process is a claim when that failure to engage reasonably in good faith interferes with, delays, or obviates a reasonable accommodation. No, it's not a freestanding claim. You can't litigate on that basis. There has to be a failure to accommodate, and if it's a failure to accommodate claim, you have to demonstrate and prove that she was qualified, and you've just conceded that she was not. And then if it's this other form of claim where the failure to accommodate rests on a failure or refusal to transfer her to a different position for which she was qualified, then you have to identify what that was and that there was a vacancy, and you haven't done that. Okay. And in this case, my client did, in fact, request a reassignment. Let's go to that issue. In fact, she said, I'll work as a secretarial position inside, around this agency, or otherwise. Eric Strong, the regional accommodation coordinator, when he was deposed, he said, Well, did you know anything about these requests for the year-long period or any of the medical requests? He said, No, I knew nothing about her condition. We could not have known since Nurse Bailey never provided us with knowledge. Now, the VA regulations provide that where a requester, an accommodation requester, makes known requests for accommodation, you have to be, the local regional accommodation coordinator has to be advised within five days. Okay, that's a process argument, and again, a process failure can't form the basis of a claim. The claim has to be failure to accommodate, and that puts the burden on you to demonstrate that she was either qualified for her old position or, if not, that she was qualified to do something else, and that there was a vacancy. You have to identify a position that she was qualified for and that was, in fact, vacant, and that the agency refused to give her that position. All right. When the local regional accommodation coordinator was deposed. Don't make a process argument. No, no. What's the substance? Identify one job that she was qualified to do where there was, in fact, a vacancy. The question presented was did there exist open-funded positions for which the claimant was entitled to look at or could arguably have been qualified? Mr. Strong, in the individual question, said there certainly were. Do you have periodic publications of these vacancies? Yes, we do. Were any of these vacancies given notice of these vacancies given to Priscilla Connors? Was a specific job vacancy identified? I didn't see that in the briefs. The job vacancies are in the record as part of the record. They are hundreds of jobs during the period of time. I think the answer to Judge Sykes' question is no, that Ms. Connors did not identify a specific vacancy, and I'll tell you why I'm thinking that. I'm thinking that because there is a point in time. I think it's sometime March, April, May, June of 13, not 12, 13, where she's asked for a copy of her resume. Correct. Is that right? Okay. And she doesn't provide one. She chooses not to. And she accompanies that choice with a statement to the VA. The reason I'm not giving you a resume is because I want to keep working as a nurse. She did try to do both. She tried the best she could to continue with her nursing. And when she could no longer do it, that's when she raises the issue. I don't think you can argue process, but I also think if you want to argue process, those facts are not best for her. When you say she didn't identify a job, I agree with you. The question is how would she know of the 3,500 employees and vacancies out there which jobs are available? I think he'll tell you because we're a public agency or we're a public department running Internet search. So the jobs exist. She asked for a reassignment. And when we get down to it, the reassignment was she was never even given the opportunity to know what she should interact with to find out if she could do those jobs. But she, it seems to me, I mean, it's a terribly unfortunate, the whole thing here is unfortunate. It is. Okay, but when she's asked for her resume, she had to have known that the point of asking for her resume was to see if there was some other job that she was qualified to perform in light of these medical challenges that she was facing. It would seem, Your Honor. I mean, what's the point of it? It would seem that the resume is a funny question. She'd worked there for five years. Her OPF file was there. Yeah, but now HR is going to get involved, right? Absolutely, HR should have been involved. But they didn't. You're suggesting that they needed her resume? Her whole work history was in their possession. All right. And she said, let me meet and confer. Let's sit down and work out. No, we're not going to tell you that these jobs exist, and we're certainly not going to sit down and talk to you about it. I'd like to reserve the rest of my time. Actually, your time has expired. Okay. Thank you. Thank you, Your Honor. Mr. Ling. Mapley's Court. Counsel. The district court here should be affirmed because there was no evidence that Ms. Connors was able to perform the essential functions for an LPN job or any job. Now, getting specifically to the issue of the LPN position, and I can tell from questions that the court has previously asked, that position requires, the essential functions of that position require strenuous, the ability to perform strenuous physical labor. It requires the ability, in addition to doing things like helping inoculate these recruits, to be able to do walking, to be able to do things like pick up and carry patients without the assistance of others, to be able to do things like administer CPR. Mr. Blunder. Let me ask you this because you're cutting right to it, so I figure I may as well, too. Certainly. Okay. What troubles me about this case is why it's not clear on day one, June 18th, if I'm not mistaken, 2012, she returns to work. All right? She suffered a horrific auto accident, a terrible accident. She's in bad shape. It should have been as clear as day to everybody on June 19th or June 20th that Ms. Connors can no longer work as a nurse, unfortunately. Her injuries, her physical, it's just way too severe. What went on between June and October at level? That's the part of this case that is just, you know, it's troubling to me. What in the world is going on? Part of what's going on, Your Honor, is the fact is that she's intermittently present on the job. From what we can tell from the record is that she gets hurt in October of 2011, and then she's on and off work for about six months after that period. I got that. Okay, and then she returns in June 12th, and then in between June of 2012 and October of 2012, there's a third surgery. It's unclear in terms of how often she is at work during that period. No, no, no. The third surgery took place on October 28th, 2012. That's correct. So she's at work, from what I can tell from the record, between the end of June of 2012 to October of 2012. Okay, focus on that period for a second. What's going on then? Because there's 26 notes that roll in. Right, and my understanding from that time period is that her immediate supervisor, Nurse Bailey, and I think this is consistent with what her deposition testimony was, is trying to accommodate her in what she understands is an accommodation. Right, and that's precisely what troubles me because Nurse Bailey is just that, a nurse. Right. So why don't these 26 notes, or even one of them, make their way to the folks at level that shoulder responsibility for trying to accommodate people that are no longer able to perform their jobs? In your brief, you fast forward us to March, right? Right. I want to rewind this. Okay. I don't have an answer to that. I can make assumptions, Judge, based on. I don't, I mean. I know the court doesn't want to hear assumptions, but I don't have the answer to that. But he, I mean, what may save you here, okay, is there's no argument that's focused on that four or five month time period. I don't know why there's not, but there's not. I think the flip side of that is that these, and that goes to the reasonable accommodation, and that requires the interactive process. This is the process argument. Interactive process is just part of that analysis, and, in fact, it's not even written within the provisions. So that she has to, she has to, she has to show that she's qualified with an accommodation, and she's not qualified. There's no accommodation that would qualify her, that would take her outside of what it is that she's supposed to do as an LPN. And there is no requirement that I'm aware of that you have to modify or change the essential functions of a position as an accommodation. It's my understanding that the nurse manager, Bailey, actually modified her, the duties of the position, made alterations in a sort of de facto effort to accommodate her, even though she didn't understand all the legal requirements, evidently. And I think that's what gets to the heart of it, too. She was trying to be a nice person. She was trying to help her out.  So they had the information. They had these periodic doctor's notes. They had some of the information, but they didn't have the full accommodation. So the notice in terms of how, whether this was going to be permanent, what kind of effects. So she could have, again, this is an assumption. No, I know, and I actually read the record exactly like Judge Sykes does. I think Nurse Bailey bent over backwards and was going to extraordinary lengths to try to do what she could. Just based upon the position she was in and trying to be a decent colleague. And that's correct. But I think at a certain point, she couldn't cover for her anymore, and it was becoming a safety concern. They didn't have a person to handle the tasks that needed to be handled to care for the patients. And at that point, there finally was, from a couple of different levels up, there was this correspondence that went to the plaintiff to ask, what is it that you need from us? We'd like to try to help you. Yeah, that's in that March-ish time period, right? Right. And the problem with that, too, is then, again, she's on and off work. So there's always going to be that issue in this case is that, how easy is it for the management to reach her? And that's something that is unfortunate, as Your Honor, as you pointed out. But that makes it that much more difficult. And that's, insofar as the interactive process is even an issue in this case, that complicates things. Now, when I say she is not qualified for any position at all, that is wrapped into the accommodation argument. It is true that it's a two-way street. The process is a two-way street. And if you can identify one of the breakdowns, and it should be noted that she was represented by counsel during this entire process, she was asked for information about, what position is it that you want? And then she repeated, she wanted to hold the same position that the VA already told her, you're not qualified to hold. Then they asked, as the court pointed out, for a resume. For whatever reason, she didn't provide one. So it's difficult to know. No, no, no, not for whatever reason. She gave the reason because she wants to keep working as a nurse. But even giving her the benefit, giving, that's right. So she didn't provide the resume. So it's difficult to say, on the other side, that we have this vacant funded position that you'd be qualified for if you don't tell us what you're qualified for. And the issue of the VA having her resume on file from years ago is not really relevant anymore because one of the things they asked for was an updated resume. Given the fact that you can't do all the things that you said you could do before as an LPN, what is it that you now can do in your current situation that we can try to find a job for you? I would be happy to entertain any further questions from the court, unless there are any further questions we'd ask that the court be affirmed. Thank you. Thank you. Mr. Bridge, your time has expired, but you can have a minute to sum up if you'd like. I appreciate that. I want to more directly address your concerns about stand-alone claims. And in this circuit, as well as the 9th, the 3rd circuits, there is no question that the failure to accommodate or the failure to interact with an individual is only actionable where the plaintiff can show that that failure to interact absolutely affected an available accommodation that was out there. And I rely upon the brief Baird, the 7th Circuit case, and to the extent that the district court announced this rule, and I agree with the rule, if you can show that the failure to interact delayed or made it impossible. When you look at the opinion of granting summary judgment in this case, the court did not apply its test at all to any of the facts. It didn't assess, for example, whether these 26 letters and their failure to deal with them affected her ability to get an accommodation. The court, in applying that rule, didn't apply the rule either to the reassignment issues. It just summarily granted judgment. I appreciate the extra time, Your Honor. All right. Thank you. Our thanks to all counsel. The case is taken under advisement.